**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| **RICK L. BURNETT,** ) | |
| ) | |
| **Petitioner,** ) | |
| v. ) | **Case No. 05-CV-2047** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |

## OPINION

On February 16, 2005, Petitioner, Rick L. Burnett, filed a Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) with a Memorandum in Support (#2). On May 13, 2005, the Government filed its Motion to Dismiss (#9). The Government argued that Petitioner's written waiver of his right to collateral attack, which was included in his plea agreement, bars his motion under 28 U.S.C. § 2255. The Government also argued, in the alternative, that Petitioner's claims of ineffective assistance of counsel are completely without merit. On May 13, 2005, Petitioner filed a Response to the Motion to Dismiss (#10).

In addition, Petitioner has filed a Motion to Incorporate Additional Case Authorities, Statutes and Exhibits (#5), and two Motions to Incorporate Additional Case Authorities (#14, #18). The Government has not filed any opposition to these Motions. Accordingly, Petitioner's Motions (#5, #14, #18) are hereby GRANTED.

This court has carefully reviewed the record in this case and the arguments of the parties. Following this careful and thorough review, the Government's Motion to Dismiss (#9) is GRANTED. Petitioner's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (#1) is dismissed.

FACTS

On November 21, 2003, Petitioner entered a guilty plea to a 27-page information charging him with 13 counts of mail fraud. Prior to the hearing, Petitioner signed a 23-page written plea agreement. The plea agreement was also signed by Petitioner's attorney, Brett N. Olmstead, and Assistant United States Attorney Colin S. Bruce. At the guilty plea hearing, this court first determined that Petitioner knowingly and voluntarily waived his right to proceed by way of indictment. Petitioner then signed a waiver of indictment form. This court also carefully and thoroughly advised Petitioner of all the rights he was giving up by pleading guilty. Assistant U.S. Attorney Bruce stated that the charge of mail fraud had the following potential penalties: "one, a maximum 20-year term of imprisonment; two, a maximum $250,000 fine; three, a maximum five-year period of supervised release; [and] four, mandatory special assessment due and payable at the time of sentencing."

This court carefully and thoroughly advised Petitioner that it would be solely the decision of the United States Attorney whether a motion for a downward departure for cooperation and assistance would be made. Petitioner stated that he understood that and that no one had promised him a specific sentence. Assistant U.S. Attorney Bruce also stated that, with Petitioner receiving a three point reduction for acceptance of responsibility, the potential sentencing guideline range was 57 to 71 months. This court asked Petitioner if, knowing that a potential sentence of 57 to 71 months was an estimate, "knowing that, do you still wish to proceed with the plea agreement and waiving your right to a trial on these charges?" Petitioner responded, "Yes, sir." This court then discussed the waiver of appeal rights included in the plea agreement. This court stated:

> Q   So you understand that based on that, just as a – based on the estimate, if you came in in the range of 57 to 71 and the Court gave you 71 months, even if that was more than either party

had recommended, it would be within the sentencing guidelines, and you would be giving up your right to appeal that conviction and sentence if it was within the sentencing guidelines?

   Do you understand that?

A Yes, sir.

Q And, also, you would be giving up your right to come in later under Title 28, United States Code, Section 2255, to collaterally attack, meaning coming in later, objecting to the proceedings, that they were either in violation of the Constitution or laws or that now you believe you had ineffective assistance in Mr. Olmstead and that you want to come in later and attack this; that you're also giving up that right, too.

   Do you understand that?

A Yes, sir.

Q And that waiving your right to appeal the conviction and sentence, waiving your right to collaterally attack, that you are doing that because it's in your best interests to waive these rights, and you personally believe that in order to obtain the benefit of the concessions made by the United States, including an opportunity to cooperate and assist; is that correct?

> A   Yes, sir.
>
> Q   You understand, though, that there is a possibility that all of that could be for naught; and you ultimately could receive no downward departure, no recommendation, and could be sentenced up to the maximum within the guidelines?
>
> A   Yes, sir.
>
> Q   And you're doing that freely and voluntarily?
>
> A   Yes, sir.
>
> Q   Nobody's forced you to do that?
>
> A   No, sir.
>
> Q   Threatened you in any way?
>
> A   No, sir.
>
> Q   Promised you anything other than the terms of the plea agreement, which you believe it's in your best interests to enter into?
>
> A   Yes, sir.

This court later emphasized that "I could ignore your counsel's recommendation, ignore the government's recommendation, sentence you to anything up to the maximum in the guidelines and that you have no right to appeal that as long as it's within the guidelines. Do you understand that?" Petitioner answered, "Yes, sir."

   At the plea hearing, Assistant U.S. Attorney Bruce recounted the factual basis for the plea. He stated that Petitioner owned and operated a business in Mount Zion, Illinois, known as 5-Star Insurance and Brokerage Firm, Incorporated. 5-Star sold insurance policies, annuities, and other

insurance-related financial products. Due to his operation of 5-Star, Petitioner was familiar with and could access confidential information on all of 5-Star's client insurance policies, account and annuity information, and account balances. Beginning in or about July 31, 2000, or before, and continuing to August 2001, or later, Petitioner knowingly devised and participated in a scheme to defraud by material misrepresentations, concealments and omissions and to obtain money by means of materially false and fraudulent pretenses, representations, and promises. Attorney Bruce stated that Petitioner knowingly used or caused the use of the U.S. Mails to further his scheme to defraud. Attorney Bruce then recounted the various counts against Petitioner and explained how Petitioner obtained money from his victims to invest, and instead deposited the money in his own personal checking account and told his victims that their money was invested in a 5-Star annuity contract. Attorney Bruce stated that 5-Star annuities do not exist. Petitioner did not invest the money given to him for investment. Attorney Bruce stated that Petitioner voluntarily confessed to FBI Special Agent Jeffrey Warren on multiple occasions "concerning his overall fraud and his fraudulent conduct involving the victims of the scheme to defraud." Petitioner acknowledged that Attorney Bruce's lengthy recitation was an accurate account of his criminal activities during the time period in question. Petitioner stated that he admitted that he violated the law as set forth in the 13 counts of the information and that these specific facts would support his plea of guilty and a judgment of conviction as to the 13 counts in the information. Petitioner stated that he was admitting that he did all of the acts indicated freely and voluntarily and "[k]nowing full well that [he] could be, at least based on a reasonable estimate, sentenced to as much as 71 months in the Federal Bureau of Prisons based on [his] admission."

 At the time of the guilty plea hearing, the parties had calculated the amount of restitution owed by Petitioner at $1,177,549. However, they also agreed that there may be some upward or downward changes in the amounts. Petitioner acknowledged that he understood the amount could exceed

$1,177,000. This court accepted Petitioner's guilty plea and found that Petitioner pled guilty "freely, voluntarily, knowingly, and intelligently after being made aware of his right to a trial by jury that he's given up, the right to appeal and collaterally attack under [2]8 U.S.C. Section 2255, which he's freely, voluntarily, knowingly, intelligently given up." Sentencing was scheduled for April 23, 2004, and Petitioner was released on bond pending sentencing.

On April 6, 2004, Petitioner filed a Motion to Continue Sentencing Hearing for Payment of Restitution. Numerous lengthy hearings were held on this motion, with Petitioner presenting evidence in an attempt to show that a business he was involved in, 22nd Century Logistics, would soon be making large sums of money, money that he could use to pay restitution to his victims. This court was not convinced that this evidence was anything more than evidence of a new scam Petitioner had started with a new set of victims, albeit more sophisticated victims. Accordingly, this court denied Petitioner's Motion to Continue on September 2, 2004. Sentencing was scheduled for October 6, 2004. This court notes that, although Petitioner's Motion was denied, Petitioner essentially received a six month continuance due to the pendency of the motion to continue.

At sentencing, Petitioner was represented by Attorney Olmstead and Attorney James R. Dowd. This court noted that the United States Supreme Court had just heard argument on <u>United States v. Booker</u>. All counsel agreed at the hearing that, because of the factual agreements and stipulations, as well as the provisions in the plea agreement regarding application of certain specific sentencing guidelines sections, there were no <u>Blakely</u> or <u>Booker</u> issues in this case. It was agreed that Petitioner would be sentenced under the guidelines.

The Government informed the court that it would not be making a motion for a downward departure pursuant to § 5K1.1 for substantial assistance. Defendant requested a downward departure for extraordinary acceptance of responsibility and presented evidence in support of this request.

Defendant's counsel continued to argue that Petitioner was valiantly trying to pay restitution to his victims through his efforts to make 22nd Century Logistics a profitable enterprise, something they argued was soon going to happen. After hearing evidence and argument, this court concluded that there was nothing extraordinary in this case which would warrant a downward departure. This court therefore determined that the applicable guideline range was 57 to 71 months.

The Government recommended a sentence of 71 months. The Government argued that a maximum sentence was appropriate because Petitioner committed a very egregious crime and essentially stole his victims' life savings. The Government argued that 22nd Century Logistics, when you cut through the hyperbole, "sounds like another fraud, another con." The Government pointed out that Corey Tolle, who had a management role in 22nd Century Logistics and testified on Petitioner's behalf regarding his motion to continue sentencing, arguably admitted to several mail fraud and securities fraud violations. At that point, this court noted that it found that Tolle "was not a credible witness." Defendant's counsel argued that a minimum sentence of 57 months was most appropriate.

This court then recounted the facts of the crimes committed by Petitioner. This court stated:

> The pattern of deceit is the same. The pattern of fraud is the same. And it's the people who believe obviously everything and anything that Mr. Burnett would tell them and give him full access to all of the information and, of course, allow him to take checks from them, reinvest, and it goes on through the various counts. The names change; the pattern doesn't. The amounts of money that are disappearing obviously go up, up, up until they exceed a million dollars.

This court then read the heartbreaking statements of some of his victims, many of whom lost everything they had saved for retirement because they trusted Petitioner. This included the statement of a 77-year-old widow who lost $330,000 of accumulated savings of 40 years. She stated that Petitioner "took advantage of me and my Christian trust in him at a time when I was most vulnerable" after her husband died and she had surgery twice.

In imposing sentence, this court stated:

> Mr. Burnett, you're fortunate that this case is under the sentencing guidelines because it is no secret to anybody who's listened to me for six years, whether it be speaking to Steve Beckett's white collar class at the University of Illinois, answering questions from Jim Turpin on Penny for Your Thoughts about federal sentencing guidelines, or in Mr. House's sentencing or any other – whether it be the teller at the Busey Bank who just took a couple hundred dollars here and there because at the end of the year they wanted a gazebo because their next-door neighbor in Mahomet had a gazebo.
>
> Whatever it is – I have said from the time I first became a federal judge – whomever in Congress enacted these guidelines must have been a friend of every congressman that's gone to prison and must have been a friend of every white collar offender because they are inadequate. They are wrong. And if I was able to sentence you under the statute, you would be receiving a sentence significantly larger than this. The guidelines are your friend, and you have benefitted from them.

> If the Supreme Court strikes them down, you can remember for the rest of your life "I was sentenced during a week that the guidelines were effective because Judge McCuskey told me on November 14, 2003, that I faced a maximum 20-year sentence under the [statute]; and he told me when he sentenced me on October 6th that if the guidelines had been stricken down he would have sentenced me to a greater sentence than the guidelines."
>
> This is a horrendous crime; and if I could apply my life experience, apply my discretion as a judge – and I was a State court judge with a range up to 20 years – you would be looking at a sentence double or triple than what you're looking at now because that is all this Court can do is apply its life experience. This is one of the worst white collar frauds I've ever seen on the most trusting, vulnerable people that I've ever read victim impact statements.
>
> A 71-month sentence is a gift from Congress, and it is the appropriate sentence in this case because that's all I can do. If I could do more, I would.

This court then imposed a sentence of 71 months in the Federal Bureau of Prisons, a term of three years supervised release upon release from imprisonment, and ordered Petitioner to pay restitution to the victims of his crimes in the amount of $1,149,537.63 and a special assessment of $1,300.00. This court allowed Petitioner to self-report on November 12, 2004, to give him time to talk to his children about his impending imprisonment. This was because of the astounding revelation during the sentencing hearing that neither Petitioner nor his wife had informed their two children that

9

Petitioner had been convicted of felony offenses and was facing a term of imprisonment. At the end of the sentencing hearing, this court noted that Petitioner had waived his right to appeal and his right to collaterally attack his sentence under Section 2255, so "there are no appeal rights to be given."

## ANALYSIS

As noted, on February 16, 2005, Petitioner filed a pro se Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (#1) and a 37-page Memorandum of Law in Support (#2). Petitioner argued that he was denied the effective assistance of counsel. He argued that his retained counsel, Attorney Olmstead, was "grossly inept and ineffective" because the sentence imposed by this court was in excess of the maximum authorized by law and was in violation of <u>United States v. Booker</u>, 125 S. Ct. 738 (2005). Petitioner essentially claimed that his counsel was ineffective for three reasons: (1) his counsel failed to file an appeal from Petitioner's conviction and sentence; (2) his counsel failed to object to a Sentencing Guideline sentence that was beyond the statutory maximum; and (3) his counsel failed to move to withdraw his guilty plea during the sentencing hearing when there was testimony that the Government did not have sufficient evidence to charge Petitioner with money laundering, making the plea involuntary "because it was induced by his counsel's misrepresentations as to what the government intended on charging him with if he did not waive his right to indictment by Grand Jury and plead guilty to the 13 count government's information alleging 'mail fraud.'"

In response, the Government filed a Motion to Dismiss (#9). The Government argues that Petitioner waived his right to file a motion under 28 U.S.C. § 2255 and this waiver bars the motion he filed in this court. In the alternative, the Government has also argued that Petitioner's claims of ineffective assistance of counsel are completely without merit. This court agrees with the Government's arguments.

The written plea agreement Petitioner signed stated, in pertinent part:

> 40. The defendant also understands that he has a right to attack his sentence collaterally on the grounds it was imposed in violation of the Constitution or laws of the United States, he received ineffective assistance from his attorney, this Court was without proper jurisdiction or the sentence was otherwise subject to collateral attack. The defendant understands such an attack is usually brought through a motion pursuant to Title 28, United States Code, Section 2255. The defendant and his attorney have reviewed Section 2255, and the defendant understands the rights that statute gives him. The defendant's attorney has fully discussed and explained this waiver with the defendant but has made no recommendation to the defendant as to the waiver of a motion under Title 28, United States Code, Section 2255. The defendant specifically acknowledges that the decision to waive the right to challenge any later claim of the ineffectiveness of the defendant's counsel was made by the defendant alone notwithstanding any advice the defendant may or may not have received from the defendant's attorney regarding this right. Regardless of any advice his attorney has given him one way or the other, in exchange for the concessions made by the United States in this Plea Agreement, the defendant hereby knowingly and voluntarily waives his right to challenge any and all issues relating to his plea agreement, conviction and sentence, including any fine or restitution,

in any collateral attack, including, but not limited to, a motion brought under Title 28, United States Code, Section 2255. The defendant acknowledges and agrees that the effect of this waiver is to completely waive any and all rights and ability to appeal or collaterally attack any issues relating to his conviction and to his sentence so long as the sentence is within the maximum provided in the statutes of conviction.

The plea agreement further stated:

>  41. The defendant states that he has not been coerced, threatened, intimidated, or in any other way involuntarily persuaded to waive his rights to appeal or collaterally attack his sentence by his attorney or anyone else. The defendant is waiving those rights because he <u>personally</u> believes it is in his best interest to do so in order to obtain the benefit of the concessions made by the United States in this agreement. The defendant understands the United States is unwilling to make some of those concessions unless he is willing to waive his rights to appeal or collaterally attack his sentence as part of the bargain. The defendant . . . asks the Court to accept this waiver so he can receive the full benefit of this agreement. (Emphasis in original).

As previously discussed, this court carefully discussed these provisions with Petitioner at the guilty plea hearing and determined that Petitioner understood the rights he was waiving and did so knowingly and voluntarily. Accordingly, a review of the record in this case demonstrates that it is

replete with evidence that Petitioner knowingly and voluntarily entered into the plea agreement and waived his right to appeal and to file a collateral attack. See United States v. Lane, 2005 WL 2304754, at *2-3 (N.D. Ind. 2005).

The Seventh Circuit has recently noted that it strictly enforces waivers of the right to challenge a sentence "within the maximum provided in the statute of conviction." See United States v. Cieslowski, 410 F.3d 353, 364 (7th Cir. 2005);see also United States v. Bownes, 405 F.3d 634, 636 (7th Cir. 2005), cert. denied, ___ S. Ct. ___, 2005 WL 2216993 (2005). In the Seventh Circuit, a defendant who, as part of a written plea agreement, expressly waives the right to file a § 2255 motion challenging his sentence may only file such a motion if he can demonstrate that the § 2255 waiver was either unknowing or involuntary or the result of the ineffective assistance of counsel. Mason v. United States, 211 F.3d 1065, 1069 (7th Cir. 2000); Jones v. United States, 167 F.3d 1142, 1145 (7th Cir. 1999); United States v. Kennedy, 2004 WL 2403806, at *1 (N.D. Ill. 2004); United States v. Schaffer, 2002 WL 31748619, at *1 (N.D. Ill. 2002). "[T]he right to mount a collateral attack pursuant to § 2255 survives only with respect to those discrete claims which relate directly to the negotiation of the waiver." Jones, 167 F.3d at 1145; see also Reed v. United States, 2005 WL 1528371, at *2 (N.D. Ill. 2005). No such claims are raised here. See Schaffer, 2002 WL 31748619, at *1.

Instead, Petitioner argues at length that he was, actually, sentenced above the statutory maximum. Petitioner notes that the mail fraud statute he was convicted of violating was amended on July 30, 2002, to change the maximum penalty from five years to 20 years. Petitioner argues that the information he pled guilty to alleged that his offenses began on July 31, 2000, or earlier and continued to August 2001, or later. Because the dates included in the information showed that the offenses occurred prior to the amendment, Petitioner contends that the maximum sentence he could receive

under the statute in effect at the time his offenses were committed was five years. He strenuously argues that the sentence imposed, which exceeded the five-year maximum, violated the ex post facto clause of the Constitution.

In its Motion to Dismiss, the Government concedes that, on July 30, 2002, the Mail Fraud statute, 18 U.S.C. § 1341, was amended by the White-Collar Crime Penalty Enhancement Act of 2002, 116 Stat. 804, which increased the penalties from a maximum of five years of imprisonment to a maximum of 20 years of imprisonment. The Government first argues, however, that all counsel, the probation office and the Court believed that the scheme charged in the information extended beyond July 30, 2002, the effective date of the amendment to 18 U.S.C. § 1341. This court agrees that the record shows that everyone was in agreement that a 20-year maximum sentence applied. However, it is not clear from the record that this agreement was not merely the result of a failure of everyone involved to recognize that the statute's amendment occurred after the dates of Petitioner's acts which were set out in the information. Indeed, the Government concedes that the last mailing charged in the information occurred on June 4, 2002.

The Government next argues that the sentence imposed did not exceed the statutory maximum of five years because Petitioner pled guilty to 13 counts. Therefore, it contends, the resulting statutory maximum penalty is actually 65 years, five years for each of the 13 counts run consecutively. The Government argues that Petitioner's sentence of 71 months is, therefore, far below the statutory maximum and well "within the maximum provided in the statutes of conviction." The Government argues that, consequently, Petitioner's waiver of his right to pursue relief under § 2255 should be enforced. In support of this argument, the Government relies on United States v. Gray, 332 F.3d 491, 492-93 (7th Cir. 2003), cert. denied, 540 U.S. 993 (2003).

In his Response to the Government's Motion to Dismiss, Petitioner accuses Assistant U.S.

Attorney Bruce of, among other things, perpetrating fraud on the court and further contends that the sentence imposed exceeded the statutory maximum because "concurrent sentencing was required." This court concludes that there is no support for this contention because the record clearly shows that no agreement as to concurrent sentencing was included in the plea agreement.

In Gray, the Seventh Circuit considered a situation similar to the situation in this case. In Gray, the defendant was sentenced to a term of 87 months based upon an erroneous assumption that the statute allowed a maximum sentence of 120 months. However, the correct subsection of the statute actually provided for a maximum sentence of 60 months. The Seventh Circuit agreed with the Government's argument that a remand for resentencing was not warranted. Gray, 332 F.3d at 493. The Seventh Circuit stated that "no reversal is warranted under the plain error standard when the sentence imposed does not exceed the combined statutory maximum achievable by running the sentences consecutively." Gray, 332 F.3d at 493. In that case, the consecutive statutory maximum for the three counts the defendant was convicted of was 156 months, so the 87 month sentence was well below the total, consecutive maximum. Gray, 332 F.3d at 493. The Seventh Circuit noted that § 5G1.2(d) of the Sentencing Guidelines states:

> If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts shall run consecutively, but only to the extent necessary to produce a combined sentence equal to the total punishment.

Gray, 332 F.3d at 493, quoting U.S.S.G. § 5G1.2(d) (2000); see also United States v. Veysey, 334 F.3d 600, 602 (7th Cir. 2003), cert. denied, 540 U.S. 1129 (2004); United States v. Hernandez, 330 F.3d 964, 984-85 n. 14, 15 (7th Cir. 2003), cert. denied, 541 U.S. 904 (2004).

The Seventh Circuit in Gray further noted that it has "refused to reverse a defendant's sentence under plain error review if on remand the district court would impose the same total sentence by imposing the individual sentences consecutively rather than concurrently to achieve the total punishment as instructed in § 5G2.1(d)." Gray, 332 F.3d at 493. This court agrees with the Government that the decision in Gray is instructive in this case. Petitioner's argument would have had some merit if he had pled guilty to one count of mail fraud which, at the time it was committed, had a maximum sentence of five years. However, Petitioner pled guilty to 13 counts of mail fraud. This court has absolutely no doubt that it would have imposed consecutive sentences as to two of these counts, as instructed by § 5G2.1(d), in order to achieve the total punishment of 71 months. Based upon Gray, this court therefore agrees with the Government that the sentence imposed in this case did not exceed the "maximum provided in the statutes of conviction." Accordingly, Petitioner's motion under § 2255 is barred by his waiver and must be dismissed. See Kennedy, 2004 WL 2403806, at *2; Schaffer, 2002 WL 31748619, at *1.

This court also notes that it agrees with the Government that Petitioner's claims of ineffective assistance of counsel are completely without merit. First, it was not ineffective for his counsel to fail to file a notice of appeal where Petitioner waived his right to appeal. Second, it was not ineffective for his counsel to fail to object to a Sentencing Guideline sentence that was beyond the statutory maximum. This court has already found that the sentence imposed was not above the statutory maximum and further concludes that the sentence was properly imposed pursuant to the terms of the plea agreement. See Cieslowski, 410 F.3d at 358-64 (the Seventh Circuit rejected the defendant's claim of ineffective assistance of counsel based upon his lawyer's failure to catch an amendment to the Sentencing Guidelines that affected the Sentencing Guidelines range for the defendant's offenses. In that case, the defendant was sentenced, pursuant to a plea agreement, to a term of 210 months and,

under the amendment, the highest sentence which could be imposed under the applicable guideline range was 168 months.)

Third, Petitioner's counsel was not ineffective for failing to file a motion to withdraw the guilty plea based upon testimony at sentencing that the Government did not have enough information to conclude that money laundering was a legitimate charge. As noted by the Government at the sentencing hearing, "it's fair to say in any white collar case, especially when we're talking over a million dollars and a lot of transactions, there's a chance that we're going to find some money laundering; and we're going to look for it." The Government noted that, although agreeing not to charge Petitioner with money laundering was not a substantial concession by the Government because it did not know of any money laundering, as far as Petitioner, "it could perhaps be best described as insurance that if something later on came up that he'd be protected from money laundering." The Government further noted that Petitioner "might have known about something or Mr. Olmstead might have known something as [Petitioner's] attorney that was out there that he might have been concerned we would have found." This statement by the Government is, in fact, consistent with a letter from Attorney Olmstead to Petitioner, which Petitioner provided to this court. In the letter, Attorney Olmstead stated that he believed the Government could have proved money laundering "if they had tried." The Government has also pointed out in their Motion to Dismiss that, based upon the testimony offered in support of Petitioner's motion to continue the sentencing hearing, Petitioner "engaged in numerous monetary transactions in connection with '22nd Century' which would support various money laundering charges."

In any case, the Government's agreement not to proceed with money laundering charges was not the only concession made by the Government in the plea agreement. The Government also gave Petitioner the opportunity to cooperate and, most importantly, made some concessions regarding the

17

applicable sentencing guideline range. In the plea agreement, the Government agreed that the 2001 Sentencing Guidelines manual (with amendments effective November 1, 2001) would be the manual used to calculate Petitioner's offense level and criminal history. The Government also agreed that Petitioner should receive a three-level reduction in offense level for acceptance of responsibility, which Petitioner received. The Government further agreed that Petitioner could argue at sentencing that he should receive a downward departure for extraordinary acceptance of responsibility, which he did.

At sentencing, this court made very clear its belief that the guideline sentencing range which applied under the terms of the plea agreement was inadequate punishment for Petitioner's crimes and that, if this court was sentencing Petitioner under the statute, he would receive a sentence double or triple the guideline range sentence. The record is clear that, if it was not for the Government's concessions regarding the applicable sentencing guideline range, this court would have imposed a significantly longer sentence on Petitioner based upon the horrendous nature of the crimes Petitioner committed. When examined objectively, it is clear that Petitioner did benefit from the plea agreement negotiated on his behalf. See Lane, 2005 WL 2304754, at *4. In fact, it appears from the record that Petitioner received a fairly generous plea considering the strength of the Government's case against him. See Lane, 2005 WL 2304754, at *4. Based upon the record in this case, this court concludes that Petitioner benefitted greatly from the representation he received from Mr. Olmstead.

This court also notes that Petitioner has argued that his sentence is improper under Booker. This court concludes that this argument is completely without merit as well. First of all, the Seventh Circuit has held that Booker claims are not cognizable in § 2255 proceedings. Broadwater v. United States, 2005 WL 1712261, at *12 (N.D. Ind. 2005), citing McReynolds v. United States, 397 F.3d 479, 481 (7th Cir. 2005). However, even if this court could consider the argument, Petitioner's

sentence is presumptively reasonable under Booker as it was properly calculated within the guidelines framework. See United States v. Paulus, 419 F.3d 693, 700 (7th Cir. 2005). This is especially true in this case as the facts were stipulated and agreed to in the plea agreement and there were no factual disputes to be determined at sentencing. See Paulus, 419 F.3d at 700 (sentence imposed proper under Booker where the court used only admitted facts, the facts stipulated by the defendant in the plea agreement, in determining guideline sentencing range).

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motions (#5, #14, #18) are GRANTED.

(2) The Government's Motion to Dismiss (#9) is GRANTED. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (#1) is dismissed.

(3) This case is terminated.

ENTERED this 28th day of October, 2005

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE